## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ORANE M. CORNISH, JR., | ) | NO. 3:23-CV-1553 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF BLOOMFIELD, ET AL., | ) | NOVEMBER 6, 2024 |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION RE: [58] DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Kari A. Dooley, United States District Judge:

Plaintiff Orane M. Cornish, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants Bloomfield Police Officers Kelsey Marschall and Devon LaBreck, alleging that on September 22, 2020, Defendants falsely arrested him.[1]  *See* Amended Complaint ("Am. Compl."), ECF No. 14.  On May 6, 2024, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing principally that Plaintiff has not plausibly alleged a false arrest claim against either Officer Marschall or Officer LaBreck.  *See* Defendants' Motion to Dismiss ("Defs. MTD"), ECF No. 58. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] While the Amended Complaint also asserts claims for malicious prosecution, excessive force, and failure to investigate, the Court notes that those claims—in addition to any claims against the Town of Bloomfield—have been dismissed in accordance with Magistrate Judge Spector's Recommended Ruling (ECF No. 15), which the Court adopted in full.  *See* ECF No. 18.

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations[2]**

The following facts are taken from the Amended Complaint and accepted as true for the purpose of Defendants' Motion to Dismiss. On September 22, 2020, Plaintiff was residing with his mother ("Ms. Laidley") and his stepbrother Jamal in Bloomfield, Connecticut. Am. Compl., ECF No. 14, at ¶ 7. Ms. Laidley was "in poor physical and mental health," and Jamal was likewise "engaged in troubling and violent behaviors that caused [Plaintiff] concern for his safety." *Id.* at ¶¶ 7–8.

In August 2019 and November 2019, Plaintiff reported his concerns regarding Jamal's behavior to "the authorities" and "cooperated fully with the police in addressing these concerns." *Id.* at ¶ 9. Prior to Plaintiff's arrest on September 22, 2020, Officer Marschall and another female

---

[2] The Court has only set forth the factual allegations contained in the Amended Complaint relating to Plaintiff's sole remaining false arrest claim.

officer responded to a 911 call placed by Ms. Laidley.[3]  *Id.* at ¶ 10.  On that occasion, Ms. Laidley informed the officers that she wanted Plaintiff removed from her home because he "spilt the milk" and "has money, he will not give me."  *Id.* at ¶ 13.  Defendant Marschall treated Plaintiff rudely, and told him to "Shut up."  *Id.* at ¶ 12.  Ms. Laidley acknowledged to the responding officers, including Officer Marschall and a "senior female police officer," that Plaintiff "helped take care of her and had not behaved aggressively toward her despite her 911 call to the contrary."  *Id.* at ¶ 14.  The officers left Ms. Laidley's home.  *Id.* at ¶ 15.

Later on September 22, 2020, Ms. Laidley was "showing signs of poor psychological health" and "threatened to call 911 and falsely report Plaintiff for aggressive behavior in order to summon Bloomfield Police Officers to her home."  *Id.* at ¶ 10.  Plaintiff was attacked by Jamal and Ms. Laidley, who bit Plaintiff on the shoulder.  *Id.* at ¶ 16.  Following the attack, Plaintiff "went outside" and "distanced himself from Jamal and Ms. Laidley," who Plaintiff believed "were suffering from psychological distress."  *Id.* at ¶ 17.  Ms. Laidley or Jamal placed a 911 call and summoned police officers, including Officer Marschall and Officer LaBreck, to the home.  *Id.* at ¶ 18.  When Officer Marschall arrived, Plaintiff "attempted to provide context to the situation" by referring to his prior interactions with the police and informing the officers that he was not the aggressor, but rather "a concerned party who had previously sought assistance from the authorities."  *Id.* at 9.  Plaintiff further "described being attacked by Ms. Laidley and Jamal," and even showed Officer Marschall "where Ms. Laidley bit him on the back."  *Id.* at ¶¶ 19–20.  Nevertheless, Plaintiff declined to press charges against Ms. Laidley and Jamal—whose conduct

---

[3]  The Amended Complaint does not explicitly set forth whether Plaintiff's prior interaction with Officer Marschall and Ms. Laidley took place in April 2020, or earlier in the day on September 22, 2020.  *Compare* Am. Compl., ECF No. 14 at ¶ 11 (describing interaction in April 2020) *with* ¶¶ 18, 21, 37 (referencing Officer Marschall's return to Ms. Laidley's home a second time, and a prior visit to Ms. Laidley's home "earlier on the evening of September 22, 2020" and "on the same evening.").  However, drawing "all reasonable inferences in the non-movant's favor," the Court has construed the Amended Complaint as alleging that the prior interaction occurred earlier in the day on September 22, 2020.  *See Interworks Sys. Inc.*, 604 F.3d at 699.

he attributed to psychological distress—and was instead arrested by Officer Marschall for "threatening and disorderly conduct." *Id.* at ¶ 21.  Officer LaBreck handcuffed the plaintiff.  *Id.* at 6–7.

Plaintiff alleges that he should not have been arrested, and that Officer Marschall "knew or should have known that Ms. Laidley was not a credible witness," based on his prior interactions with Plaintiff and Ms. Laidley.  *Id.* at ¶ 26.  Plaintiff further alleges, *inter alia*, that he had previously warned the Bloomfield Police Department about Jamal's dangerous and threatening behavior, and that Ms. Laidley had been previously arrested for attacking Plaintiff's sister. *See id.* at ¶ 30.

Due to his arrest, Plaintiff was subjected to a protective order whereby he could not access "his computer/machine repair and programming work." *Id.* at ¶ 21.  The protective order resulted in Plaintiff being homeless from the date of his arrest "until present day," insofar as "no landlords would grant [Plaintiff] residency." *Id.* at ¶ 30.  Plaintiff's criminal charges were "disposed of" in April 2022, "by entry of a nolle prosequi." *Id.* at ¶ 31.

**Procedural History**

On November 28, 2023, Plaintiff commenced this action by filing a Complaint against the Town of Bloomfield, Officer Marschall, Officer LaBreck, and Chief Hammick, arising from Plaintiff's arrest on September 22, 2020, and subsequent criminal prosecution.  ECF No. 1. Thereafter, Magistrate Judge Robert M. Spector conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915, and on December 15, 2023, recommended that all of Plaintiff's claims be dismissed without prejudice, except for his false arrest claim against Officer Marschall. *See* ECF No. 12.  On December 21, 2023, consistent with Judge Spector's Recommended Ruling, Plaintiff filed an Amended Complaint.  *See* ECF No. 14.  On January 18, 2024, Judge Spector

issued a Recommended Ruling as to the Amended Complaint, recommending that Plaintiff's false arrest claim be permitted to proceed as pleaded against both Officer Marschall and Officer LaBreck, and that Plaintiff's remaining claims be dismissed with prejudice.  ECF No. 15.  On February 8, 2024, the Court adopted Judge Spector's Recommended Ruling in its entirety.  *See* ECF No. 18.

Defendants filed the instant Motion to Dismiss on May 6, 2024.[4]  ECF No. 58.  On May 7, 2024 and May 16, 2024, Plaintiff filed a series of purported objections to Defendants' Motion. ECF Nos. 61, 65, 66.  On May 21, 2024, Defendants filed a reply brief in further support of their Motion to Dismiss.  ECF No. 67.

**Discussion**

Defendants principally argue that Plaintiff's false arrest claim against Officer Marschall and Officer LaBreck must be dismissed, because the Amended Complaint does not plausibly rebut the existence of probable cause established by Ms. Laidley's 911 call on September 22, 2020.  *See* Defs.' MTD at 16–17.  Defendants further assert that the Amended Complaint does not adequately allege facts establishing a nexus between Officer LaBreck and Plaintiff's arrest.  *Id.* at 17 n.3.  In response, Plaintiff contends that the allegations set forth in the Amended Complaint are sufficient to survive a motion to dismiss.  *See* ECF Nos. 61, 65, 66.  The Court agrees in part with Defendants, and in part with Plaintiff.

---

[4] Since Defendants filed their Motion to Dismiss, Plaintiff has repeatedly attempted to file a Second Amended Complaint.  *See* ECF Nos. 70, 76–78, 95, 134, 138.  The Court has denied each of Plaintiff's purported motions to amend, primarily due to Plaintiff's persistent failure to comply with the Federal Rules of Civil Procedure and the Court's explicit instructions regarding the requirements for filing a proper motion to amend.  *See* ECF Nos. 75, 79, 128, 156.  The Court has also denied the proposed amendments on the grounds that Plaintiff has repeatedly sought to name defendants and assert claims that have previously been dismissed from this case with prejudice.  *See* ECF Nos. 128, 156.

"To state a valid claim for false arrest [] under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 111 (D. Conn. 2019) (quotations omitted). Under Connecticut law, prevailing on a false arrest claim requires a demonstration that the defendant acted without probable cause. *Id.*; *see also Marchand v. Simonson*, 16 F. Supp. 3d 97, 109 (D. Conn. 2014). Therefore, "[t]he existence of probable cause is a complete defense to claims of false arrest [] under both federal and Connecticut law." *Chase*, 360 F. Supp. 3d at 112 (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008)); *Walczyk v. Rio*, 496 F.3d 139, 152 n.14 (2d Cir. 2007); *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007).

Probable cause exists when officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk*, 496 F.3d at 156. "It is well-established that statements of a victim or an eye-witness to an alleged crime constitute probable cause unless there are reasons to doubt the veracity of such sources." *Johnson v. Fallon*, No. 3:07-CV-605 (SRU), 2009 WL 513733, at *4 (D. Conn. Feb. 10, 2009) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *see also Virgil v. Town of Gates*, 455 Fed. App'x. 36, 38 (2d Cir. 2012) ("A victim's identification of an assailant is, by itself, sufficient probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.") (internal quotation marks omitted). Probable cause is not vitiated by an officer's failure to investigate the arrestee's claim of innocence, nor is an officer required "to continue investigating, sifting and weighing information" once probable cause has been established. *See Johnson*, 2009 WL 513733 at *4 (quoting *Panetta v. Crowley*, 460 F.3d 388,

395–98 (2d Cir. 2006)); *see also Cafasso v. Nappe*, No. 3:15-CV-920 (MPS), 2017 WL 4167746, at *7 (D. Conn. Sept. 20, 2017) ("an officer has no duty to investigate exculpatory defenses.").

Here, Defendants submit that probable cause to arrest Plaintiff on September 22, 2020 existed on the basis of Ms. Laidley's second 911 call, and that the Amended Complaint fails to plausibly rebut the existence of probable cause because "there are not facts alleged as to the earlier encounter that day which establish that Ms. Laidley's subsequent complaints lacked credibility." Defs.' MTD at 17. To that end, Defendants assert that the prior interaction between Plaintiff, Ms. Laidley, and Officer Marschall on September 22, 2020 is irrelevant. *Id*. The Court disagrees.

The prior interaction between Plaintiff, Ms. Laidley, and Officer Marschall is relevant, because, as alleged, it provided Officer Marschall with a legitimate reason to doubt the veracity of Ms. Laidley's subsequent 911 call, thereby arguably vitiating any probable cause that might otherwise have been established by Ms. Laidley's complaint. Indeed, the Amended Complaint plainly alleges that during the prior interaction on September 22, 2020, Ms. Laidley informed Officer Marschall that Plaintiff "helped take care of her and had not behaved aggressively toward her *despite her [earlier] 911 call to the contrary*." *See* Am. Compl. at ¶ 14 (emphasis added). In other words, Ms. Laidley admitted to Officer Marschall that she falsely implicated Plaintiff in her initial 911 call. *See id*. Accepting Plaintiff's allegations as true, Ms. Laidley's admission is sufficient to raise doubts as to the veracity of her subsequent 911 call, at least for purposes of a motion to dismiss. *See Panetta*, 460 F.3d at 395. While it is true, as Defendants posit, that events might have transpired which gave rise to probable cause after Plaintiff and Ms. Laidley's initial encounter with Officer Marschall, *see* Defs.' MTD at 17, this argument misses the mark. As set forth above, by the time Ms. Laidley called 911 for a second time on September 22, 2020, Officer Marschall had a legitimate reason to doubt the veracity of her complaints. Therefore, Plaintiff's

7

allegation that his arrest lacked probable cause insofar as it was based upon Ms. Laidley's complaint is sufficient to plausibly allege a claim of false arrest.  A jury could conclude that further investigation was required before making any arrest.  *See Panetta*, 460 F.3d at 395 ("[c]ourts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.") (internal quotation marks omitted).  Indeed, the circumstances of Officer Marschall's second visit to the home on September 22, 2020 did nothing to undermine the available conclusion that Ms. Laidley lacked credibility, or otherwise establish probable cause for Plaintiff's arrest.  Rather, the responding officers—including Officer Marschall—were informed by Plaintiff that he had been attacked by Ms. Laidley and Jamal, and were even shown "where Ms. Laidley bit him on the back."  Am. Compl., ECF No. 14 at ¶¶ 19–20.  Plaintiff also recalled his prior interactions with the police and informed the officers that he was not the aggressor, but rather "a concerned party who had previously sought assistance from the authorities."  *Id.* at ¶ 9.  For these reasons, the Court concludes that the Amended Complaint plausibly alleges that Officer Marschall lacked probable cause to arrest Plaintiff.[5]

---

[5]  In their reply brief, Defendants argue that "the evidence" confirms the existence of probable cause and the veracity of the victim(s) statements.  *See* Defs.' Reply at 3–4.  Without specific citation to the aforementioned evidence, Defendants merely allude to information contained in the relevant arrest report and/or victim statements.  *See id.*  But even if Defendants had attached this evidence to their Motion to Dismiss, they do not assert any reason why it may be considered by the Court at the motion to dismiss stage, or otherwise argue that the Court may take judicial notice thereof.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (In considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  As such, the Court has not given any consideration to the purported "evidence" relied upon in Defendants' reply.

As to Officer LaBreck, however, the Court agrees that the claims against him should be dismissed.[6]  Unlike Officer Marschall, the Amended Complaint does not allege any reasons for Officer LaBreck to question Ms. Laidley's veracity as a complaining victim.  In fact, Plaintiff does not allege that Officer LaBreck was present during the prior encounter with Plaintiff, Ms. Laidley, and Officer Marschall on September 22, 2020, wherein Officer Marschall's basis for doubting Ms. Laidley was established.  Nor does Plaintiff allege that Officer LaBreck was advised regarding or otherwise aware of Officer Marschall's earlier interaction with Plaintiff and Ms. Laidley.  Thus, the Court concludes that the Plaintiff has not plausibly alleged a false arrest claim as to Officer LaBreck, because Ms. Laidley's 911 call, the complainant's assertion that Plaintiff had committed an offense, was sufficient to establish probable cause.[7]  *See Panetta*, 460 F.3d at 395; *Johnson*, 2009 WL 513733 at *4.

In light of the foregoing, the Court concludes that the Amended Complaint adequately states a false arrest claim as to Officer Marschall, but fails to state a false arrest claim as to Officer LaBreck.

Defendants' Remaining Arguments

Defendants further argue—in a footnote and in their reply brief, respectively—that: (a) Plaintiff's false arrest claim should be dismissed as untimely, *see* Defs.' MTD at 13 n.2; and (b)

---

[6] Defendants contend that the Amended Complaint contains no facts establishing any nexus between Defendant LaBreck and Plaintiff's arrest.  The Court disagrees.  Indeed, by handcuffing Plaintiff, Defendant LaBreck was necessarily personally and physically involved in Plaintiff's arrest. *See Goff v. Chivers*, No. 3:15-CV-722 (SALM), 2017 WL 2174404, at *6 (D. Conn. May 17, 2017) ("Under Connecticut law, false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another.").

[7] The Amended Complaint further asserts that Officer LaBreck was involved in a "potential cover-up, contributing to the plaintiff's arrest without probable cause," apparently in light of his alleged failure to review body camera footage and/or archive the relevant arrest records.  *See* Am. Compl., ECF No. 14, at 6–8.  Even liberally construed, these allegations describe conduct that necessarily occurred subsequent to Plaintiff's arrest, and are therefore insufficient to demonstrate that Officer LaBreck lacked probable cause to arrest Plaintiff. *See Mathis v. Marshall*, No. 08-CV-3991, 2012 WL 388539, at *28 (S.D.N.Y. Jan. 30, 2012) ("The probable cause determination must be made by looking at what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.") (internal quotation marks omitted).

9

even if Defendants lacked probable cause to arrest Plaintiff, they are entitled to qualified immunity, *see* Defs.' Reply, ECF No. 67, at 6–10. The Court is not persuaded.

As an initial matter, the Court finds that Plaintiff's false arrest claim is not barred by the statute of limitations, in light of Governor Lamont's Executive Order 7G, which suspended Connecticut statutes of limitations for 347 days between March 2020 and March 2021, in response to the COVID-19 pandemic.[8]  Indeed, courts in this Circuit—and in this District—have consistently found that executive orders enacted in response to the COVID-19 pandemic toll borrowed state statutes of limitations for the purposes of a Section 1983 claim. *See, e.g.*, *Connelly v. Komm*, No. 3:20-CV-1060 (JCH), 2021 WL 5359738, at *4 (D. Conn. Nov. 16, 2021); *Bonilla v. City of New York*, No. 20-CV-1704 (RJD) (LB), 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020). Accordingly, the statute of limitations was suspended on September 22, 2020, the date of the arrest. Thereafter, the statute of limitations for Plaintiff's false arrest claim began to run when the suspension was lifted pursuant to Governor Lamont's Executive Order 10A, on March 1, 2021.[9]  As this Complaint was filed on November 28, 2023, the claim is timely. *See Connelly*, 2021 WL 5359738 at *3 (D. Conn. Nov. 16, 2021) ("The statute of limitations for claims in Connecticut under [S]ection 1983, which courts borrow from Connecticut's personal injury statute, is three years.").

As to qualified immunity, the Court first observes that Defendants did not assert a qualified immunity defense in their initial moving papers. Nevertheless, even accepting that Defendants properly addressed qualified immunity in response to Plaintiff's opposition—which first raised the issue—the Court is unconvinced that Officer Marschall possessed arguable probable cause to

---

[8] *See* Executive Order No. 7G (March 19, 2020), CT.Gov, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf.

[9] *See* Executive Order No. 10A (February 8, 2021), CT.Gov, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf.

arrest Plaintiff on September 22, 2020. *See Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) ("In the context of a false arrest claim, qualified immunity protects an officer if he had 'arguable probable cause' to arrest the plaintiff."). As set forth *supra*, the Amended Complaint plausibly alleges that Officer Marschall had a legitimate reason to question Ms. Laidley's veracity, and that the ensuing circumstances of Plaintiff's arrest did not establish probable cause. Moreover, "a defendant asserting a qualified immunity defense on a motion to dismiss 'faces a formidable hurdle . . . and is usually not successful.'" *Barnett v. Mount Vernon Police Dep't.*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). Thus, the Court concludes that the question of qualified immunity cannot be determined based strictly on the allegations in the Amended Complaint. Defendant Marschall may pursue qualified immunity as an affirmative defense going forward.

**Conclusion**

For all of the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. The Clerk of the Court is directed to terminate Officer LaBreck as a Defendant.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of November 2024.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE